

ORIGINAL



# 20377

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ETHAMMA EMMANUEL , d/b/a, 7-11 25452, individually and on behalf of all others similarly situated, | **3-08CV0507-K** |
| | CIVIL ACTION NO._____ |
| Plaintiff, | |
| | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| ARCTIC GLACIER INCOME FUND, ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL, INC., REDDY ICE HOLDINGS, INC., and HOME CITY ICE COMPANY, |  |
| Defendants. | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

MAR 2 4 2008

CLERK, U.S. DISTRICT COURT
By _____
Deputy

Plaintiff, Ethamma Emmanuel d/b/a 7-11, 25452, on behalf of itself and all those

similarly situated, brings this action for damages under the antitrust laws of the United States

against the above-named Defendant manufacturers of Packaged Ice (described herein), who

participated in a conspiracy designed to fix, raise, maintain and/or stabilize the price for

Packaged Ice sold in the United States and Canada.

## NATURE OF THE CASE

1.     This case arises from an international conspiracy among the Defendants and their

co-conspirators to fix prices, allocate markets and territories and commit other anticompetitive

practices designed to unlawfully fix, raise, maintain, and/or stabilize the prices of Packaged Ice

sold in the United States.  Packaged ice, as defined below, consists of packaged cubed, crushed, block and dry ice.

2.      The United States Department of Justice (the "DOJ") is presently investigating possible anticompetitive practices in the Packaged Ice industry.

3.      Prior to the DOJ investigation, Jerry Antoniuk, owner of Polar Ice, a Canadian Packaged Ice manufacturer, made a complaint to Canada's Competition Bureau (the "Bureau") and filed a civil antitrust suit against Arctic Glacier, one of the Defendants in this action, alleging that Arctic Glacier had engaged in anticompetitive strong-arm tactics in the Edmonton, Canada geographic area that included "muscling," bribing, and offering kick-backs to Polar Ice's customers.  Alberta's Court of Queen's Bench awarded Polar Ice $50,000 in damages.

4.      Mr. Antoniuk says that he has been in contact with the DOJ, and that the DOJ has said it may use court documents from the Polar Ice civil case in its investigation.

5.      On March 6, 2008, Defendant Arctic Glacier Income Fund issued a press release:

> Arctic Glacier Income Fund (TSX:AG.UN) today announced that on March 5, 2008, its operating subsidiary, Arctic Glacier Inc., became aware the Antitrust division of the Untied States Department of Justice is conducting an investigation into possible antitrust issues in the packaged ice industry. The company will cooperate with authorities in the course of the investigation.

6.      On March 6, 2008, Packaged Ice manufacturer and Defendant Reddy Ice Holdings Inc. ("Reddy Ice") issued a press release stating:

> Reddy Ice Holdings, Inc. (NYSE: FRZ) announced that federal officials executed a search warrant at the Company's corporate office in Dallas on March 5, 2008.  The Company is cooperating with the authorities.

7.     Reddy Ice spokeswoman Courtney Birck has confirmed that the DOJ did take "various documents and information."

8.     On March 9, 2008, Defendant Arctic Glacier Income Fund issued an additional press release stating that although "its corporate head office has not been subjected to search in relation to the investigation of the packaged ice industry by the" DOJ, Arctic Glacier Inc., "the Fund's operating company ... is in receipt of a subpoena requiring production of documents. The U.S. Department of Justice has requested cooperation in the production of any such documents and information located outside the U.S. That may assist in the investigation."

9.     The fact that the DOJ issued a subpoena for documents from Defendant Arctic Glacier and was able to justify to a court the need for a search warrant allowing it to seize "various documents and information" from Defendant Reddy Ice indicates that the DOJ has probable cause to believe that those defendants engaged in an anticompetitive conspiracy relating to Packaged Ice. The details necessary to make out probable cause likely came from an industry informant or from a Packaged Ice competitor who may have entered int the DOJ's amnesty program.

## JURISDICTION AND VENUE

10.     Plaintiff brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 4 of the Clayton Act, 15 U.S.C. § 15(a).

12.     Venue is proper in this Judicial District pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and (d) because, during the Class Period, Defendants and/or their co-conspirators resided, transacted business, or were found in this District, or because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

13.     This Court has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) committed acts in furtherance of the conspiracy alleged herein in this district; (b) directed the unlawful conspiracy through persons and entities located in the United States and this district, including fixing the prices of Packaged Ice sold to purchasers in this district with the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including this district; (c) transacted business in Packaged Ice and other products throughout the United States and in this district; (d) maintains and has maintained continuous and systematic contacts with this district throughout the time of the alleged conspiracy; (e) has substantial aggregate contacts with the United States; and/or (f) has purposefully availed itself of the benefits of doing business in the United States and, more particularly, in this district. Accordingly, each of the Defendants maintains minimum contacts with this district more than sufficient to subject it to service of process and sufficient to comply with due process of law. Alternatively, there is jurisdiction over the foreign defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## DEFINITIONS

14.     "Class Period" means the period from January 1, 2002 to the present.

15. "Person" means any individual, partnership, corporation, association or other business or legal entity.

16. "Packaged Ice," as the term is used in this Complaint, includes cubed, crushed, block or dry ice products sold in a variety of package sizes.

## PLAINTIFF

17. Plaintiff, Ethamma Emmanuel d/b/a 7-11, 25452 is a Pennsylvania corporation with its principal place of business at 2301 West Passyunk Avenue, Philadelphia , Pa. 19145. During the Class Period, Plaintiff purchased Packaged Ice directly from one or more of the Defendants.

## DEFENDANTS

18. Defendant Arctic Glacier Income Fund is an open-ended limited purpose mutual fund trust whose principal activity is to invest in Packaged Ice manufacturing and distribution businesses in Canada and the United States through its ownership of defendant Arctic Glacier Inc. (together, "Arctic Glacier"). Arctic Glacier is a business entity organized under the laws of Alberta, Canada with its principal place of business located in Winnipeg, Manitoba. In its recent press releases, Arctic Glacier described itself as follows:

> Arctic Glacier Income Fund, through its operating company, Arctic Glacier Inc., is a leading producer, marketer and distributer of high-quality packaged ice in North America under the brand name of Arctic Glacier ® Premium Ice. Arctic Glacier operates 37 manufacturing plants and 50 distribution facilities across Canada and the northeast, central and western Untied States servicing more than 70,000 retail accounts.

19. Arctic Glacier is among the largest producers, marketers, and distributers of Packaged Ice in North America, with total revenues of $259 million for 2007. Of those revenues,

more than 80 percent comes from its U.S. operations, in which it has dominant market positions

in major eastern seaboard cities such as New York and Philadelphia, New England, California,

and the Midwest. The company also controls most of the Packaged Ice sales in Canada.

20.     Since its start in 1996 Arctic Ice has grown significantly through an aggressive

acquisition strategy. At a cost of more than $470 million, Arctic Ice has acquired 63 packaged

ice businesses in Canada and the United States (26 in Canada and 37 in the United States).

Arctic Glacier claims that as a result of its "geographically contiguous acquisitions" it is now the

largest producer and distributor of packaged ice in each of the markets in which it operates.

21.     Defendant Arctic Glacier International Inc. ("Arctic Glacier International") is a

wholly-owned subsidiary of Arctic Glacier and serves as its operating and holding subsidiary in

the Untied States. Arctic Glacier International is a Delaware Corporation with its principal place

of business located in West St. Paul, Minnesota.

22.     Defendant Reddy Ice Holdings, Inc. ("Reddy Ice"), a Delaware corporation with it

principal place of business located in Dallas, Texas, described itself in a March 6, 2008 press

release as follows:

> Reddy Ice Holdings, Inc. is the largest manufacturer and distributor
> of packaged ice in the United States. With over 2,000 year-round
> employees, the Company sells its products primarily under the
> widely known Reddy Ice® brand to approximately 82,000
> locations in 31 states and the District of Columbia. The Company
> provides a broad array of product offerings in the marketplace
> through traditional direct store delivery, warehouse programs, and
> its proprietary technology, The Ice Factory®. Reddy Ice serves
> most significant consumer packaged goods channels of
> distribution, as well as restaurants, special entertainment events,
> commercial users and the agricultural sector.

23.     Reddy Ice has the dominant market position in the U.S. sunbelt states, from Florida to Arizona.

24.     Reddy Ice manufactures and distributes ice products, including cubed ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice.  Reddy Ice sells approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags, sold principally to convenience stores and supermarkets.

25.     Reddy Ice markets its ice products to a range of customers, including supermarket chains, mass merchants and convenience stores, wholesale ice and food distributors, commercial users, resorts and restaurants, agricultural buyers and competitive producers and self-suppliers. The primary purchasers of Reddy Ice's traditional ice products and users of its "Ice Factory®" service include retailers with no internal ice production capacity.

26.     Reddy Ice has relationships with approximately 175 third party ice distributors and co-packers throughout its market area who deliver a portion of its products to its customers and sell ice to their own customers.  Reddy Ice has contractual relationships with approximately 110 of these distributors and co-packers.

27.     During the Class Period, as defined below, Reddy Ice began trading on the New York Stock Exchange.  Prior to August 12, 2005, it had been privately held under the name Packaged Ice, Inc.

28.     Defendant Home City Ice Company ("Home City"), is a closely held company with its headquarters located in Cincinnati, Ohio.  Home City has plant locations and retails in Ohio, Pennsylvania, Michigan, Indiana, Illinois, Kentucky, West Virginia and Tennessee.  It also retails in parts of New York and Maryland.

## CO-CONSPIRATORS AND AGENTS

29. Wherever in this Complaint reference is made to any act, statement or transaction of any corporation or entity, the allegation means that the corporation or entity engaged in the act or transaction, or made the statement, by or through its officers, directors, members, partners, agents, employees or representatives while they were engaged in the management, direction, control or conduct of the corporation's or entity's business or affairs and acting within the scope of their authority.

30. Various other persons, firms and corporations not named as Defendant herein have participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on its own behalf and on behalf of all others similarly situated. The "Class" is defined as:

> All persons and entities in the United States who purchased packaged ice directly from Defendants during the period from January 1, 2002 to the present. Excluded from the Class are Defendants, their co-conspirators and their respective parents, subsidiaries and affiliates.

32. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at

least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

33.     Plaintiff's claims are typical of the claims of Class members and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Packaged Ice from a Defendant and its interests are consistent with and not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

34.     Questions of law and fact common to the Class are:

    a.    Whether Defendants and their co-conspirators engaged in a contract, combination or conspiracy to fix, raise, maintain or stabilize prices or allocate customers for Packaged Ice;

    b.    The identity of participants in the conspiracy;

    c.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

    d.    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

    e.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and other members of the Class;

    f.    Whether Defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein;

g.    The effect of the conspiracy on prices for Packaged Ice sold to purchasers in the United States during the Class Period; and

h.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

35.    These questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

36.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties in management that would preclude maintenance as a class action.

37.    The Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INTERSTATE TRADE AND COMMERCE

38.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate and foreign commerce.

39.    During the Class Period, Defendants and their co-conspirators sold and shipped substantial quantities of Packaged Ice in a continuous and uninterrupted flow of interstate or

foreign commerce to customers located in states or countries other than the states or countries in which the Packaged Ice was produced.

## VIOLATIONS ALLEGED

40.     Defendants are the largest manufacturers of Packaged Ice in the United States and North America.  Sales of Packaged Ice are approximately $1.8 billion annually.  About half of those sales are produced by third-party manufacturers, with the other half produced in-house (ice machines).  Sales by Defendants comprise a majority of third-party manufacturers' sales of Packaged Ice.

41.     Canada is a major exporter of ice into the United States.

42.     Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to the present, Defendants and their co-conspirators engaged in an unlawful contract, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of Packaged Ice, a per se violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

43.     The Packaged Ice industry has high barriers to entry.  The industry has high start-up and replacement costs, and many customers carry only one brand of ice and have long term relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice products.

44.     During the Class Period, Defendants engaged in illegal, anticompetitive conduct by, inter alia, allocating markets so that Defendants were no longer in competition with each other.

45.     The market allocation aspect of the Defendants' conspiracy worked in part because while Reddy Ice has the dominant market position in the U.S. sunbelt states, from Florida to Arizona, and the Northwest, Arctic Glacier has a dominant market position in Minnesota, the Central and Northeastern states and California.  Accordingly, there is virtually no overlap between the geographic markets in which each Defendant operates.  Defendants agreed not to compete head to head in any of the markets in which one of them was dominant.  Each region of the U.S. market, as hereinbefore alleged, is controlled by one particular Packaged Ice manufacturer.

46.     By engaging in conduct that allocated the market among the Defendants, price competition was reduced or eliminated throughout the United States and Canada.

47.     The Packaged Ice industry is highly seasonal, characterized by peak demand during the warmer months of May through September.  Approximately 69 percent of annual revenues occur during this time.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

48.     Until March, 2008, when it became evident through the public actions and the statements of Defendants and the DOJ, neither Plaintiff nor the class members had knowledge of the violations alleged herein, since Defendants and their co-conspirators actively and fraudulently concealed the existence of, and their participation in, the conspiracy alleged above.

49.     Defendants engaged in a successful, illegal price-fixing and market allocation conspiracy that, by its nature, was inherently self-concealing.

50.     Plaintiff and the Class members could not have discovered the alleged contract, combination or conspiracy at an earlier date by the exercise of reasonable diligence, which they

did exercise, because of the deceptive practices and techniques secretly employed by Defendants and their co-conspirators to avoid detection of, and to fraudulently conceal, their contract, combination or conspiracy. While holding themselves out as honest competitors, Defendants fraudulently concealed the contract, combination or conspiracy herein alleged by various means and methods, including, but not limited to, secret meetings and surreptitious communications.

51.    The affirmative actions of the Defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

52.    By virtue of the fraudulent concealment by Defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the Class members have as a result of the unlawful contract, combination or conspiracy alleged in this Complaint.

## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT

53.    Plaintiffs incorporate Paragraphs 1 through 51 as if fully set forth herein. Beginning at least as early as January 1, 2002, and continuing to the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into and engaged in a contract, combination or conspiracy to fix, raise, maintain or stabilize the prices and allocate customers for Packaged Ice, an unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

54.    For the purpose of formulating and effectuating the aforesaid contract, combination or conspiracy, Defendants engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain or stabilize prices and allocate customers for Packaged Ice. Defendants' anticompetitive activities included:

a. Participating in meetings, conversations and communications concerning Packaged Ice pricing, minimum prices, customer allocation, the sharing of markets, and/or the exchange of other commercially important and confidential information;

b. Agreeing on coordinated pricing, minimum prices, allocation of customers, sharing of markets, and/or the exchange of other commercially important and confidential information relating to Packaged Ice; and

c. Selling Packaged Ice to Class members at supra-competitive prices in accordance with the agreements reached.

55. Plaintiff and the Class members paid more for Packaged Ice than they would have paid under conditions of free and open competition. As a direct and proximate result of the illegal contract, conspiracy, or combination alleged above, Plaintiff and Class members were injured and financially damaged in their business and property, in amounts that are not presently determinable.

56. The foregoing allegations are likely to have evidentiary support after a reasonable opportunity for discovery.

## DEMAND FOR JURY TRIAL

57. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that:

a.   The Court determines that this action may be maintained as a class action

pursuant to Federal Rule of Civil Procedure 23;

b.   The unlawful combination and conspiracy alleged herein be adjudged and

decreed to be a per se unreasonable restraint of trade or commerce in

violation of Section 1 of the Sherman Act;

c.   Plaintiff and the Class recover compensatory damages, as provided by law,

determined to have been sustained by each of them, and that joint and

several judgments in favor of Plaintiff and the Class, respectively, be

entered against the defendants, in an amount to be trebled in accordance

with the antitrust laws pursuant to 15 U.S.C. § 15(a);

d.   Plaintiff and the Class recover their costs of this suit, including reasonable

attorneys' fees, to the extent provided by law; and

e.   Plaintiff and the Class be awarded such additional relief as the Court may

deem proper.

Dated: March 24, 2008

Terrell W. Oxford
Barry C. Barnett
**SUSMAN GODFREY LLP**
Suite 5100
902 Main Street
Dallas, TX 75202-3775
(214) 754-1900

Eugene A. Spector
William G. Caldes
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA  19103
215-496-0300


John Murdock
**MURDOCK GOLDENBERG SCHNEIDER &
GROH, LPA**
35 East Seventh Street, Suite 600
Cincinnati, Ohio  45202
(513) 345-8291

*Attorneys for Plaintiff*

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Ethamma Emmanuel, d/b/a 7-11 25452, individually and on behalf of all others similarly situated.

**DEFENDANTS**

Reddy Ice Holdings, Inc., Arctic Glacier Income Fund, Arctic Glacier, Inc.; Arctic Glacier International, Inc.; and Home City Ice Company

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Dallas Co., Texas

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Terrell W. Oxford & Barry C. Barnett, Susman Godfrey L.L.P., 901 Main Street, Suite 5100, Dallas, Texas 75202; 214-754-1900

Attorneys (If Known)

MAR 2 4 2008

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (Place an "X" in One Box)

| | |
|---|---|
| ☐1 U.S. Government Plaintiff | X 3 Federal Question (U.S. Government Not a Party) |
| ☐2 U.S. Government Defendant | X 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | X 4 | 4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐3 | 3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury - | ☐620 Other Food & Drug | ☐423 Withdrawal | X 410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product | Med. Malpractice | ☐625 Drug Related Seizure | 28 USC 157 | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | Liability | ☐365 Personal Injury - | of Property 21 USC 881 | | ☐450 Commerce |
| ☐150 Recovery of Overpayment | ☐320 Assault, Libel & | Product Liability | ☐630 Liquor Laws | **PROPERTY RIGHTS** | ☐460 Deportation |
| & Enforcement of Judgment | Slander | ☐368 Asbestos Personal | ☐640 R.R. & Truck | ☐820 Copyrights | ☐470 Racketeer Influenced and |
| ☐151 Medicare Act | ☐330 Federal Employers' | Injury Product | ☐650 Airline Regs. | ☐830 Patent | Corrupt Organizations |
| ☐152 Recovery of Defaulted | Liability | Liability | ☐660 Occupational | ☐840 Trademark | ☐480 Consumer Credit |
| Student Loans | ☐340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐490 Cable/Sat TV |
| (Excl. Veterans) | ☐345 Marine Product | ☐370 Other Fraud | ☐690 Other | | ☐810 Selective Service |
| ☐153 Recovery of Overpayment | Liability | ☐371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐850 Securities/Commodities/ |
| of Veteran's Benefits | ☐350 Motor Vehicle | ☐380 Other Personal | ☐710 Fair Labor Standards | ☐861 HIA (1395ff) | Exchange |
| ☐160 Stockholders' Suits | ☐355 Motor Vehicle | Property Damage | Act | ☐862 Black Lung (923) | X 875 Customer Challenge |
| ☐190 Other Contract | Product Liability | ☐385 Property Damage | ☐720 Labor/Mgmt. Relations | ☐863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐195 Contract Product Liability | ☐360 Other Personal | Product Liability | ☐730 Labor/Mgmt.Reporting | ☐864 SSID Title XVI | ☐890 Other Statutory Actions |
| ☐196 Franchise | Injury | | & Disclosure Act | ☐865 RSI (405(g)) | ☐891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐892 Economic Stabilization Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motions to Vacate | ☐790 Other Labor Litigation | ☐870 Taxes (U.S. Plaintiff | ☐893 Environmental Matters |
| ☐220 Foreclosure | ☐442 Employment | Sentence | ☐791 Empl. Ret. Inc. | or Defendant) | ☐894 Energy Allocation Act |
| ☐230 Rent Lease & Ejectment | ☐443 Housing/ | **Habeas Corpus:** | Security Act | ☐871 IRS—Third Party | ☐895 Freedom of Information |
| ☐240 Torts to Land | Accommodations | ☐530 General | | 26 USC 7609 | Act |
| ☐245 Tort Product Liability | ☐444 Welfare | ☐535 Death Penalty | | | ☐900Appeal of Fee Determination |
| ☐290 All Other Real Property | ☐445 Amer. w/Disabilities - | ☐540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐550 Civil Rights | | | to Justice |
| | ☐446 Amer. w/Disabilities - | ☐555 Prison Condition | | | ☐950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| X 1 Original Proceeding | ☐2 Removed from State Court | ☐3 Remanded from Appellate Court | ☐4 Reinstated or Reopened | ☐5 Transferred from another district (specify) | ☐6 Multidistrict Litigation | ☐7 Judge from Magistrate Judgment | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 15

Brief description of cause:
Antitrust

## VII. REQUESTED IN COMPLAINT:

X  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

Massini, et al. v. Arctic Glacier Income Fund, et al; #3-08-cv-0496-D; Judge Fitzwater
Five Angels Management, et al. v. Arctic Glacier Income Fund, et al; #3-08-cv-480-P; Judge Solis

JUDGE                                    DOCKET NUMBER

DATE   March 24, 2008

SIGNATURE OF ATTORNEY OF RECORD

Terrell W. Oxford (by Kenneth E. Gardner w/perm.)

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE